```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
ALVIN CHARLES LEON,                                   :
                                                      :
                               Plaintiff,             :
                                                      :
                        v.                            :
                                                      :
DEPARTMENT OF EDUCATION,                              :
                                                      :
                               Defendant.             :
                                                      :
------------------------------------------------------X
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 27, 2017
```

15 Civ. 7275 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

For over 30 years, Plaintiff Alvin Charles Leon worked as a teacher and guidance counselor for the New York City Department of Education (the "DOE" or "Defendant"). And for nearly all of those years, Plaintiff received no negative feedback about his performance. But things changed in 2010, when Teri Stinson became the principal of Public School 30M ("P.S. 30M"), where Plaintiff was then employed. Stinson and Plaintiff did not get along. According to Plaintiff, Stinson publicly berated him. She overloaded his schedule with menial tasks. And she gave Plaintiff two negative year-end performance reviews that had the ultimate effect of freezing Plaintiff's salary. In 2014, the discord between Plaintiff and Stinson reached a fever pitch, and Plaintiff was forced into an early retirement.

In 2015, Plaintiff, proceeding *pro se*, sued the DOE and Stinson, claiming that Stinson had discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C.

§§ 621-634. Plaintiff amended his complaint in 2016, removing Stinson as a defendant and increasing substantially the volume of his allegations.[1]

Defendant has moved to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that it is untimely and meritless. Because the Court disagrees with both of those arguments, Defendant's motion is denied.

## BACKGROUND[2]

### A.  Factual Background

Including attachments, Plaintiff's Amended Complaint is 166 (mostly single-spaced) pages long. Many of the allegations therein are duplicative; many more concern workplace slights that have no bearing on whether Defendant unlawfully discriminated against Plaintiff. What follows here is an abbreviated account of the Amended Complaint's allegations, which the Court accepts as true for the purposes of this Opinion. *E.g.*, *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is 63 years old and began working for Defendant in October of 1982. (AC 3, 16). He started his career as a teacher, but was a tenured

---

[1]  Stinson, however, is still listed as a defendant in this case's docket. The Clerk of Court is directed to terminate Stinson as a party to this action.

[2]  This Opinion draws on facts from Plaintiff's Amended Complaint ("AC" (Dkt. #18)) and the exhibits attached thereto ("AC, Ex. [ ]" (Dkt. #18-1, 18-2)). *See, e.g.*, *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing documents that may be considered in Rule 12(b)(6) context). The first 31 pages of Plaintiff's Amended Complaint (i.e., everything before the exhibits) consist of (i) a form "Complaint for Employment Discrimination," which Plaintiff has marked as "Amended"; (ii) a document titled "Amended Complaint for Employment Discrimination"; and (iii) a second document titled "Amended Complaint for Employment Discrimination," which contains 25 numbered paragraphs. For the purpose of citing to pages in the Amended Complaint, the Court will treat these three submissions as a single 31-page filing, using the page numbers assigned by this Court's ECF system. This Opinion also cites to Plaintiff's

guidance counselor at P.S. 30M when this case's operative events occurred. (*Id.* at 13; *id.*, Ex. C at 2). Up until the time Stinson joined P.S. 30M, Plaintiff never had a "blemish" on his professional record. (AC 15; *accord id.* at 29).

Stinson became P.S. 30M's principal in 2010. (AC 11; *id.*, Ex. K at 3). Although the Amended Complaint does not disclose clearly why or when the antagonism between Plaintiff and Stinson began, it does make clear that that antagonism was acute and sustained. Stinson, for example, is alleged to have "humiliated and disrespected" Plaintiff by "yell[ing] at [him] or condescendingly sp[eaking] to [him] in front of [his] students, parents[,] and staff." (AC 25; *id.*, Ex. F at 22). "Stinson would … often peer into [Plaintiff's] office through the glass panel in [his] door" and look at Plaintiff and his students "in a menacing, disdainful way." (AC 17-18). And Stinson directed Plaintiff to perform several unnecessary workplace tasks in an effort "to overload or overburden [Plaintiff] … and frustrate [him] to the point of retirement." (*Id.* at 18).

Stinson also put "falsified reports and … lying letters" in Plaintiff's employee file, and those documents "discredited unjustly [Plaintiff's] job performance and [his] character." (AC 15). Among these reports were two year-end evaluation forms — one for the 2011-12 school year, which Stinson signed on June 14, 2012, and another for the 2012-13 school year, which Stinson signed on June 21, 2013 — in which Stinson gave Plaintiff an "Overall

---

original Complaint ("Compl." (Dkt. #2)), and a transcript of a conference held on March 31, 2016 ("3/31/16 Conf. Tr." (Dkt. #16)). For ease of reference, the Court refers to Defendant's memorandum in support of its motion to dismiss as "Def Br." (Dkt. #25), and to Plaintiff's response as "Pl. Opp." (Dkt. #28).

Evaluation" rating of "U" (for "Unsatisfactory"). (*Id.*, Ex. D). The first of these reports indicated that Plaintiff was late to work 25 times in the 2011-12 school year; Stinson deemed Plaintiff's "lateness" "excessive." (*Id.*).

These year-end reports had two financial consequences for Plaintiff. First, they prevented Plaintiff "from working during summer school months and ... working school processions during the regular school terms." (AC 20; *accord id.* at 5). Plaintiff recounts that he had worked during the summer "consecutively for about 19 years," and that "[t]he income from these summer procession jobs, etc., [was] very instrumental" to him. (*Id.*, Ex. K at 4). Second, the negative reports prevented Plaintiff from receiving "yearly salary raises." (AC 20; *accord id.* at 5). The reports appear to corroborate this: They indicate that Plaintiff received the same salary for the 2011-12 and 2012-13 school years. (*Id.*, Ex D). Although Plaintiff writes that he "was given waivers to later appeal" these two ratings, Plaintiff "was never granted hearings for" these appeals, and it does not appear that the "waivers" ameliorated either of the reports' financial consequences. (AC 5; *accord id.* at 20; *see* Pl. Opp. 6, 11).

Plaintiff alleges that Stinson's animosity towards him was — at least in part — born of her distaste for older educators, and Plaintiff supports this claim with an array of circumstantial evidence. "[M]ore than once," Plaintiff recalls, "Stinson called [Plaintiff] into her office ... and asked [Plaintiff] how old [he] was and how many years [he had] worked for the" DOE. (AC 17). At school meetings, Stinson "gleefully and almost laughingly" discussed bolstering P.S. 30M's budget with money formerly paid to "recently retired" "staff

4

members"; some of that money, Plaintiff recalls, went to "hiring ... younger and less experienced" teachers. (*Id.* at 16). Plaintiff further alleges that someone (he does not identify who) saw "letters or documentation from the [DOE] in ... Stinson's office" that "encourage[d] or instruct[ed] [Stinson] to get rid of seasoned or aged staff of P.S. 30M." (*Id.* at 31; *accord id.* at 23).

And it appears that Plaintiff was not the only "experienced" P.S. 30M employee to suffer from Stinson's discrimination. Attached to Plaintiff's Amended Complaint is a list of roughly a dozen former P.S. 30M teachers and staff members — all of whom are over 40 years old, "practically all of" whom were "forced to" "resign[]" or "retire[]" or who were "transferred" out of the school, and many of whom were replaced by individuals under the age of 40. (AC, Ex. A).

On February 26, 2014, and evidently at Stinson's behest, a "Notice of Determination of Probable Cause on Education Law § 3020-a Charges" was issued against Plaintiff. (AC, Ex. H; *see* AC 16). Section 3020-a provides a statutory mechanism for bringing charges of "incompetency or misconduct" against tenured New York City educational employees. N.Y. Educ. Law § 3020-a(1). Plaintiff states that the basis for his § 3020-a notice was Stinson's "allegations and accusations ... with regards to insubordination, poor work performance, and unprofessionalism." (AC 15). Plaintiff was subsequently "given an 'ultimatum' that if [he] retired by June 30, 2014 ... all charges [against him] would be dropped." (*Id.*). An undated draft of Defendant's "Post-Charge Stipulation of Settlement" is attached as an exhibit to the Amended

5

Complaint: It provides, in relevant part, that if Plaintiff "irrevocably retire[d] from employment with the" DOE, he would receive "a 'neutral letter' documenting his service with [the] DOE," but would be unable to "seek []or accept any employment with the [DOE] after the effective date of his irrevocable retirement." (AC, Ex. C at 5-6). Plaintiff accepted the DOE's offer, and entered into an "unjust[,] vile[,] 'forced' retirement" on June 30, 2014. (AC 15, 20).

**B.     Procedural Background**

On January 31, 2014 (and by Plaintiff's account, also before that date), Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). (AC 3). On June 12, 2015, the EEOC mailed to Plaintiff a letter (the "Right to Sue Letter") that stated that the EEOC would not be pursuing Plaintiff's case and instructed Plaintiff that if he wished to sue the DOE, he would have to do so within 90 days of receiving the letter. (*Id.* at 8-9, 12).

On September 14, 2015, Plaintiff filed his initial Complaint, naming the DOE and Stinson as defendants. (Compl. 1). There, Plaintiff wrote that he had received the EEOC's Right to Sue Letter on June 12, 2015. (*Id.* at 4). Plaintiff attached that letter, which bears a June 12, 2015 *mailing* date, to his Complaint. (*Id.* at 5-6).

The Court held a conference on the DOE and Stinson's proposed motion to dismiss the Complaint on March 31, 2016. (3/31/16 Conf. Tr. 1; *see* Dkt. #12). During the conference, counsel for the DOE and Stinson argued that Plaintiff's Complaint was untimely, because if Plaintiff had received the EEOC's

6

Right to Sue Letter on June 12, 2015, then he needed to file his Complaint by September 10, 2015 (four days before Plaintiff actually filed it). (*Id.* at 12-13). After the conference concluded, the Court issued an Order granting Plaintiff leave to amend his Complaint. (Dkt. #15).

Plaintiff filed his Amended Complaint on May 2, 2016. (AC 1). The Amended Complaint differed from Plaintiff's original Complaint in three salient respects. First, the Amended Complaint removed Stinson as a defendant. (*Id.* at 1-2). Second, in the Amended Complaint, Plaintiff alleged that he had received the EEOC's Right to Sue Letter on June 17, 2015. (*Id.* at 4, 12). Finally, the Amended Complaint was over 150 pages longer than its predecessor.

Defendant filed its motion to dismiss on August 18, 2016. (Dkt. #24). Briefing concluded when Plaintiff filed his opposition on November 28, 2016. (Dkt. #28).

## DISCUSSION

Defendant's motion to dismiss asserts two core arguments. First, Defendant argues that Plaintiff's Complaint is untimely, because he filed it more than 90 days after receiving the EEOC's Right to Sue Letter. Second, Defendant argues that Plaintiff's Amended Complaint fails to state a claim for relief under the ADEA. Both arguments fail.

**A.     Plaintiff Timely Filed His Complaint**

   **1.     Applicable Law**

"An action alleging an employer's violation[] of … [the] ADEA … must be commenced within ninety days of the plaintiff's receipt of a right-to-sue letter from the EEOC, if such a letter is issued." *Legrá* v. *Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, No. 14 Civ. 9245 (JGK), 2016 WL 6102369, at *2 (S.D.N.Y. Oct. 19, 2016) (citing 29 U.S.C. § 626(e)).  "'Normally it is assumed that a mailed document is received three days after its mailing,' and 'it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice.'" *Martinez* v. *Riverbay Corp.*, No. 16 Civ. 547 (KPF), 2016 WL 5818594, at *4 (S.D.N.Y. Oct. 4, 2016) (quoting *Sherlock* v. *Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996)). But these twin presumptions are "not dispositive" and can be rebutted "[i]f a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail." *Tiberio* v. *Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011) (per curiam) (quoting *Sherlock*, 84 F.3d at 526); *cf. Salerno* v. *City Univ. of N.Y.*, No. 99 Civ. 11151 (NRB), 2002 WL 31856953, at *4 n.6 (S.D.N.Y. Dec. 19, 2002) (under *Sherlock*, "an affidavit or other admissible evidence" are simply examples of types of evidence that may rebut the receipt-three-days-after-mailing presumption).

**2.    Analysis**

In his initial Complaint, Plaintiff alleged that he received the EEOC's letter on June 12, 2015 — the day it was mailed. (Compl. 4; Def. Br. 3). And that "statement," Defendant contends, "is a binding admission." (Def. Br. 4). Thus, Defendant argues, even though Plaintiff claims in his Amended Complaint that he received the letter on June *17*, 2015, Plaintiff's time to initiate this action expired on September 10, 2015: ninety days after June 12, 2015, and four days before Plaintiff filed his Complaint. (*See* Def. Br. 3-4).

Not quite. "'[A] statement in a withdrawn complaint that is superseded by an amended complaint without the statement is no longer a conclusive judicial admission,' and any contradictions with prior pleadings can be used only in attacking a witness's credibility." *Xie* v. *JPMorgan Chase Short-Term Disability Plan*, No. 15 Civ. 4546 (LGS), 2016 WL 3963113, at *3 (S.D.N.Y. July 20, 2016) (quoting *Tho Dinh Tran* v. *Alphonse Hotel Corp.*, 281 F.3d 23, 32 (2d Cir. 2002), *overruled on other grounds by Slayton* v. *Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006)). Thus, Plaintiff is not "bound" by the allegation he made in his initial Complaint that he received his Right to Sue Letter on June 12, 2015.

What of Plaintiff's allegation in the Amended Complaint that he received his Right to Sue Letter on June 17, 2015? There is good reason to be skeptical of Plaintiff's revised timeline: Plaintiff filed his Amended Complaint one month after the March 31, 2016 conference, during which Defendant argued that Plaintiff's Complaint was untimely under the ADEA's 90-day filing deadline.

And the Court cannot say with certainty that Plaintiff has provided the "firm substantiation" necessary to conclude "that he received the [R]ight to [S]ue [L]etter more than three days after its mailing." *Martinez*, 2016 WL 5818594, at *4.

But whether Plaintiff has rebutted the receipt-three-days-after-mailing presumption is of no moment, because under that presumption, Plaintiff timely filed his Complaint. The Right to Sue Letter bears a mailing date of June 12, 2015. (AC 8-9). And the Court presumes that Plaintiff received it three days later, on June 15, 2015. 90 days after June 15, 2015, was September 13, 2015 — a Sunday. Thus, Plaintiff's deadline for filing his Complaint was September 14, 2015, the date he did in fact file it. *See Doner-Hendrick* v. *N.Y. Inst. of Tech.*, No. 11 Civ. 121 (SAS), 2011 WL 2652460, at *6 (S.D.N.Y. July 6, 2011) (applying S.D.N.Y. Local Civil Rule 6.4 to compute filing deadline for complaint bringing Title VII and ADEA claims, and noting that under Rule 6.4, "when the last day of a statutory period falls on a legal holiday, a claimant has until the end of the next day that is neither a holiday nor a weekend to file her complaint"). Plaintiff thus timely filed his Complaint.

### B.     Plaintiff Has Stated a Claim for Relief Under the ADEA

#### 1.     Applicable Law

A complaint "survive[s] a [Rule 12(b)(6)] motion to dismiss" if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, 'a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege [i] that adverse action was taken against her by her employer, and [ii] that her age was the but-for cause of the adverse action.'" *Downey* v. *Adloox Inc.*, No. 16 Civ. 1689 (JMF), 2017 WL 816141, at *2 (S.D.N.Y. Feb. 28, 2017) (internal quotation marks omitted) (quoting *Marcus* v. *Leviton Mfg. Co.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (summary order)); *accord Smith* v. *Bronx Cmty. Coll. Ass'n*, No. 16 Civ. 3779 (JMF), 2017 WL 727546, at *1 (S.D.N.Y. Feb. 23, 2017).  To this first element, "[a] plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (internal quotation marks and citation omitted).  And to the second, "[t]he condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer[']s *only* consideration, but rather that the adverse employment action[] *would not have occurred without it*." *Delaney* v. *Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (per curiam) (citation omitted).

Recent decisions from the Second Circuit have shed light on what constitutes a plausible anti-discrimination claim.  At the motion-to-dismiss stage, an ADEA plaintiff "need not give plausible support to the ultimate

11

question of whether the adverse employment action" of which he complains "was attributable to discrimination." *Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015).  Nor is an ADEA plaintiff obligated "to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework." *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, to pass Rule 12(b)(6)'s muster, an ADEA "plaintiff must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Leviton Mfg.*, 661 F. App'x at 32 (quoting *Littlejohn*, 795 F.3d at 310-11).  And this burden requires an ADEA plaintiff to "supply sufficient factual material, and not just legal conclusions, t[hat] push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" *Id.*

Before applying these principles to Plaintiff's case, the Court notes again that he is representing himself.  And "[w]here, as here, a plaintiff proceeds *pro se*, the court must 'construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].'" *Jones* v. *Westchester Cty.*, 182 F. Supp. 3d 134, 142-43 (S.D.N.Y. 2016) (emphasis added) (quoting *Sykes* v. *Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (per curiam)).  "This obligation 'applies with particular force'" in this case "because [Plaintiff] alleges that [Defendant] violated [his] 'civil rights.'" *Crawley* v. *Macy's Retail Holdings, Inc.*, No. 15 Civ. 2228 (KPF), 2016 WL 6993777, at *4 (S.D.N.Y. Nov. 29, 2016) (quoting *Jackson* v. *N.Y. State Dep't of Labor,* 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010)).

### 2. Analysis

Defendant argues that, for two principal reasons, Plaintiff has not alleged plausibly that Defendant violated the ADEA.³ First, Plaintiff has not established that Defendant took an adverse employment action against him. And second, Plaintiff has not alleged plausibly "that [his] age was the 'but-for' cause of any" of Stinson's complained-of actions. (Def. Br. 7). Both arguments fail, although the second presents a far closer question than the first.

### i. Plaintiff Suffered an Adverse Employment Action When Stinson Gave Him an "Unsatisfactory" Rating for the 2012-13 School Year

To start, Plaintiff has established that he was the victim of at least one adverse employment action. In the Amended Complaint, Plaintiff alleges that he received two "Unsatisfactory" year-end ratings: one for the 2011-12 school year, and another for the 2012-13 school year. And Plaintiff alleges that those ratings prevented him from receiving annual raises. "There is little question that denial of a raise qualifies as an adverse employment action." *Magilton* v. *Tocco*, 379 F. Supp. 2d 495, 503 (S.D.N.Y. 2005); *accord Nidzon* v. *Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 349 (S.D.N.Y. 2010) ("Under the law of the Second Circuit, the denial of a salary increase is … sufficiently material to constitute an adverse employment action.").

---

3   "[C]ourts in this [C]ircuit have consistently held that the ADEA does not impose liability on individuals." *Wang* v. *Palmisano*, 51 F. Supp. 3d 521, 537 (S.D.N.Y. 2014). Although this Opinion refers to Stinson's alleged misconduct, she cannot be held liable under the ADEA; Defendant, Stinson's employer, can. Indeed, counsel for then-defendants Stinson and the DOE identified this issue in a March 15, 2016 letter (Dkt. #12), and Plaintiff did not name Stinson as a defendant in his May 2, 2016 Amended Complaint (AC 1).

True, denial of a "discretionary" bonus may "not pass the test for an 'adverse employment action.'" *Boyar* v. *City of N.Y.*, No. 10 Civ. 65 (HB), 2010 WL 4345737, at *3 (S.D.N.Y. Oct. 28, 2010). But the Amended Complaint suggests that Plaintiff's raises were "customary, expected, [and] warranted, ... so that the denial of such a raise would constitute 'a materially adverse change in the terms and conditions of employment.'" *Fullwood* v. *Ass'n for the Help of Retarded Children, Inc.*, No. 08 Civ. 6739 (DAB), 2010 WL 3910429, at *6 (S.D.N.Y. Sept. 28, 2010) (emphasis removed) (quoting *Kassner*, 496 F.3d at 238). What is more, Plaintiff also alleges that these "Unsatisfactory" ratings prevented him from working during the summer months for the first time in 19 years, which surely qualifies as a material adverse change in the conditions of his employment for Defendant.

To the extent Plaintiff's ADEA claim is predicated on the first of these reports — which is dated June 14, 2012 — it is "time-barred," because it accrued more than "300 days prior to" January 31, 2014, when Plaintiff alleges he filed his charge of discrimination with the EEOC. *Krzesaj* v. *N.Y.C. Dep't of Educ.*, No. 16 Civ. 2926 (ER), 2017 WL 1031278, at *14 n.19 (S.D.N.Y. Mar. 15, 2017). (*See* AC 3). But the second of these reports is dated June 21, 2013, fewer than 300 days before Plaintiff filed his EEOC charge. Because that report prevented Plaintiff from receiving a yearly raise and summer-school income, the Court considers it an adverse employment action cognizable under the ADEA.

To be clear, the vast majority of the actions about which Plaintiff complains do not constitute adverse employment actions. Rather, they "are 'trivial harms' — i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience,'" and which do not qualify as "materially adverse." *Rivera* v. *Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014) (emphasis removed) (internal quotation mark omitted) (quoting *Tepperwien* v. *Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011)). But Plaintiff's June 21, 2013 "Unsatisfactory" rating *did* affect him in a negative, material way. And the Court is thus confident that this rating qualifies as an adverse employment action under the ADEA.

      **ii.    The Amended Complaint Plausibly Supports a Minimal Inference That Plaintiff's Age Was the But-For Cause of Stinson Giving Him an "Unsatisfactory" Rating**

Whether Plaintiff's age was the "but-for cause" of Stinson's decision to label his 2012-13 performance "Unsatisfactory" is more difficult to determine. The Amended Complaint, and to an even greater extent its exhibits, provide many dates that help create a timeline of Plaintiff's relationship with Stinson. Plaintiff has also alleged many facts that suggest that Stinson discriminated against Plaintiff and other older employees at P.S. 30M because of their age. But Stinson's alleged acts of age-based animus lack dates: Plaintiff does not allege, for example, when any of the dozen or so "over 40" employees he lists in Exhibit A "retired," "resigned," or were "transferred." (AC, Ex. A). And in a way, the breadth of Plaintiff's allegations in the Amended Complaint cuts

15

against his ADEA claim, because it suggests that Stinson took adverse actions against Plaintiff for many reasons unrelated to his age.

But the thrust of Plaintiff's Amended Complaint is that for four-and-a-half years, Stinson made Plaintiff's professional life unbearable in an effort to force his retirement.  And the Amended Complaint's allegations suggest that Stinson's actions in this regard were part of a broader effort to replace older P.S. 30M employees with younger ones, a suggestion Plaintiff substantiates with accounts of his own personal experiences and those of his former colleagues.  *Cf. Dressler* v. *City Sch. Dist. of the City of N.Y.*, No. 15 Civ. 3696 (JPO), 2016 WL 4367967, at *3 (S.D.N.Y. Aug. 15, 2016) (counseled ADEA plaintiff did not plausibly allege age animus where complaint did "not allege that [plaintiff] was the target of, or overheard, 'invidious comments' related to his age or to the age of others; or that employees not in his protected group were treated more favorably; or that he was passed over for a work assignment or other opportunity in favor of a person outside his protected group; or other actions by [d]efendants plausibly viewed, in context, as a basis upon which to infer age-based discrimination" (internal quotation marks omitted) (citing *Vega*, 801 F.3d at 88-89; *Littlejohn*, 795 F.3d at 312)).

Through her alleged words and actions, Stinson manifested a bias against P.S. 30M employees over the age of 40.  And as a result of that bias, Plaintiff alleges that he received year-end ratings of "Unsatisfactory" for the first time in his decades-long career with Defendant.  Although Plaintiff's age may not have been Stinson's "*only* consideration" when she signed Plaintiff's

16

2012-13 year-end report, the Amended Complaint raises a minimal inference that Plaintiff would not have received an "Unsatisfactory" rating were it not for his age. *Delaney*, 766 F.3d at 169.

Read in the light most favorable to Plaintiff — and construed liberally because he is representing himself — Plaintiff's "age discrimination allegations are sufficient to clear th[e] low bar" that Rule 12(b)(6) imposes on an ADEA claimant. *Alfaro-Flecha* v. *ORC Int'l, Inc.*, No. 15 Civ. 1402 (AJN), 2016 WL 67722, at *4 (S.D.N.Y. Jan. 5, 2016). Ultimately, Plaintiff has alleged plausibly a minimal inference of age discrimination, and his Amended Complaint survives Defendant's motion to dismiss.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 24. The parties are further ORDERED to file a joint Case Management Plan and Scheduling Order **on or before April 28, 2017**. The parties are further ORDERED to appear before the Court for a status conference on **May 8, 2017, at 3:30 p.m.**, in Courtroom 618 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007.

The Court encourages Plaintiff to contact the New York Legal Assistance Group ("NYLAG") Legal Clinic for Pro Se Litigants in the Southern District of New York before attending the May 8, 2017 conference. Attached to this Opinion is a flier containing important information about the NYLAG clinic.

SO ORDERED.

Dated:   March 27, 2017
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Opinion was mailed by Chambers to:*

Alvin Charles Leon
120 W. 123rd Street
Apt. 7-3
New York, NY 10027



Since 1990, NYLAG has provided free civil legal services to New Yorkers who cannot afford private attorneys.

# Free Legal Assistance for Self-Represented Civil Litigants in Federal Court in Manhattan and White Plains

The NYLAG Legal Clinic for Pro Se Litigants in the Southern District of New York is a free legal clinic staffed by attorneys and paralegals to assist those who are representing themselves or planning to represent themselves in civil lawsuits in the Southern District of New York. The clinic, which is not part of or run by the court, assists litigants with federal civil cases including cases involving civil rights, employment discrimination, labor law, social security benefits, foreclosure and tax.

**Thurgood Marshall United States Courthouse**
Room LL22
40 Centre Street
New York, NY 10007
Our office is just inside the ground-level entrance to the courthouse, on Pearl Street.

**Open weekdays 10 a.m. - 4 p.m.**
Closed on federal and court holidays

To make an appointment for a consultation, call (212) 659-6190 or stop by the clinic during office hours. Please note that a government-issued photo ID is required to enter the building.

**The clinic offers in-person appointments only. The clinic does not offer assistance over the phone or by email.**

Disclaimer: The information contained herein is for informational purposes only and is not legal advice or a substitute for legal counsel, nor does it constitute advertising or a solicitation.


a beneficiary of UJA Federation of New York